■ MICHAEL KOSKINAS et al., Respondents, v J. EMILIO CARRILLO et al., Appellants. [625 NYS2d 546] —Order of the Supreme Court, New York County (Edward H. Lehner, J.), entered August 29, 1994, which denied plaintiffs' motion to hold defendants in contempt with leave to renew in the event that defendants fail to comply with the court's directive that the Health and Hospitals Corporation ("HHC") adopt proce-

dures under which it must keep itself informed, for a period of 90 days after discharge, of the activities of former mentally ill patients, unanimously modified, on the law, without costs, this aspect of the order vacated, and the matter remanded for the settlement of an order which complies with the standards set forth in *Heard v Cuomo* (80 NY2d 684).

In *Heard v Cuomo* (80 NY2d 684, 691, *supra),* the Court of Appeals held that "[Mental Hygiene Law § 29.15] requires that HHC take concrete steps to prescribe in the discharge plan the specific type of adequate and appropriate housing necessary for the about-to-be-discharged mentally ill patients; to assist in locating such adequate and appropriate housing before the patients are discharged from inpatient care; to discharge the patients in accordance with their individual written service plans that include the recommended housing; and to coordinate the effectuation of those efforts among the responsible entities." The Court declared, moreover, that subdivisions (f) and (g) of that statute "require more than the creation of chart documentation for patients. Memorializing a discharge service plan in writing and delivering it to a mentally ill patient upon discharge from a hospital is not all that the statute commands." *(Supra,* at 689.) Although the Court of Appeals expressly observed that HHC must undertake additional concrete action and responsibility beyond that involved in simply preparing a form, so as to give some real meaning to its task, defendants persist in maintaining that the law does not mandate that they perform any follow-up whatsoever of the homeless mentally ill patients that are discharged from their facilities.

Thus, defendants, notwithstanding the clear direction of the Court of Appeals in *Heard (supra),* contend that HHC's existing program is sufficient to conform to the dictates of Mental Hygiene Law § 29.15. It is uncontested, however, that the current discharge plan does not even actually ensure that, upon discharge, the homeless mentally ill reach any of the residences to which they are directed. Nor does HHC's current plan compel staff members to take any affirmative action beyond that involved in doing some discharge paperwork. We agree with the Supreme Court that because the Court of Appeals has determined that Mental Hygiene Law § 29.15 requires HHC to produce a discharge plan that is more than a simple form, defendants' complete failure to develop any follow-up mechanism whatsoever necessarily means that it is not in compliance with its obligations.

However, as plaintiffs-respondents concede, "[t]here is nothing in [Mental Hygiene Law] § 29.15 that directs a specific duration for any follow up." Indeed, in a different context, this Court recently held that Mental Hygiene Law §§ 29.15 and 31.19 did not require a State psychiatric center to discharge patients within a fixed time period *(Adriane A. v Cuomo*, 213 AD2d 235). We noted that these statutory provisions cannot be "read separately or together, as imposing any duty on the State to discharge patients to appropriate residences, within any fixed time after they have been determined to be clinically ready for discharge. The statute, in brief, contains no such time provision." *(Supra*, at 235.) Our observation in *Adriane A.* is informative here, where, similarly, the 90-day time period for follow-up developed by the Supreme Court is without explicit support in either the applicable statutes or regulations.

Furthermore, while we are mindful of the frustration engendered by the defendants' position that no follow-up whatsoever is required, because the 90-day follow-up period ordered by Supreme Court is without support in the record as currently developed, it cannot stand. It is true that in the absence of any explicit statute or regulation a court may in some instances be called upon "to establish its own minimum standards" *(McCain v Koch*, 70 NY2d 109, 120) without encroaching on legislative and executive prerogatives. Here, however, the Supreme Court erred in formulating the particular standard requiring a 90-day follow-up period. It failed, among other things, to give due deference to the agency's expertise in constructing a follow-up program and is without sufficient support in the record. We therefore modify Supreme Court's order to the extent of deleting that portion which requires HHC to follow-up its discharged patients for a 90-day period. In remanding for settlement of an order in accord with *Heard (supra)*, we note that it is within the Supreme Court's discretion to conduct a hearing, either upon the request of a party or *sua sponte*, on what the proper follow-up standard should be. Concur—Sullivan, J. P., Ellerin, Wallach, Kupferman and Mazzarelli, JJ.